UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

CONSOLIDATED ENERGY, INC., et al.

DEBTORS                                            CASE NO. 07-70314
                                                   CHAPTER 11
                                                   Jointly Administered

**MEMORANDUM OPINION**

This matter is before the court on T-Quip Sales and Rentals, Inc.'s Motion to Compel Eastern Consolidated Energy, Inc. to Perform Post Petition Obligations Under Equipment Lease, For Adequate Protection and Conditional Order Vacating the Automatic Stay ("the Motion to Compel").  Eastern Consolidated Energy, Inc. ("ECE"), Case No. 07-70318, is one of the cases being jointly administered herein.[1] ECE rents mining equipment from T-Quip Sales and Rental, Inc. ("T-Quip") pursuant to a Rental/Purchase Option Agreement ("the Rental Agreement").[2]  ECE filed an Objection to Motion to Compel.  The matter was heard on September 6, 2007, and the parties were given a briefing schedule. ECE filed a Supplemental Brief in Support of its Objection, and T-Quip filed a Reply in Support of the Motion to Compel.  The matter has now been taken under consideration for decision.

---

[1] Consolidated Energy, Inc. is the parent of the Debtor; its affiliates are Warfield Processing, Inc., Eastern Consolidated Oil & Gas, Inc., and Morgan Mining, Inc.

[2] The equipment covered by the Rental Agreement consists of the following: 2001 Komatsu Excavator, 2001 Komatsu Wheeled Loader, 2000 CAT Dozer, (2)1999 CAT Articulated Rock Trucks, 1992 CAT Articulated Rock Truck, 2004 Ingersoll Rand Light Tower.

1

1.    Factual and procedural background

The Debtor, a Kentucky corporation, filed its Chapter 11 petition in this court on July 12, 2007; an order for joint administration of the cases set out above was entered on July 27, 2007.  As set out by the Debtor, T-Quip initially provided it with certain mining equipment under a rental/purchase option agreement dated March 15, 2005 ("the 2005 Agreement").  The 2005 Agreement was to expire in September 2006.  A financing statement in regard to the equipment referenced in the 2005 Agreement was filed with the Kentucky Secretary of State's office on February 23, 2005.  The total rental/purchase price, $1,674,5000.00, was to be paid by way of a $100,000.00 down payment, and $10,000.00, $15,000.00, and $25,000.00 per week rental payments, for a certain number of weeks each.

The Rental Agreement being considered herein is dated February 28, 2006, some seven months before the 2005 Agreement was set to expire.  The Debtor states that the equipment the Rental Agreement covers is not the same equipment as that covered in the 2005 Agreement.[3]  Further, T-Quip has acknowledged that the Debtor never signed the Rental Agreement, and that the rental/purchase price was omitted from it.  The Rental Agreement does state that the Debtor owed T-Quip $365,000.00, presumably under the terms of the 2005 Agreement.  Payments under the Rental Agreement were calculated as an amount per ton of clean coal mined by the Debtor.

The Motion to Compel seeks an order which would require the

---

[3] The equipment covered by the 2005 Agreement consists of the following: 1999 Komatsu Excavator, 2001 Komatsu Excavator, 1996 CAT C & R Dozer, 2000 Komatsu Wheel Loader, 2005 Ingersoll Rand Light Tower, 1993 Komatsu Haul Truck, 1999 CAT D Dozer, 1997 Reedrill Drill.

Debtor to comply with the terms of the Rental Agreement under Bankruptcy Code section 365(d) and grant T-Quip relief from the automatic stay if it fails to do so.  The Debtor pays T-Quip $0.50 per ton for each ton of clean coal delivered from the Debtor's Warfield mine with a minimum payment of $30,000.00 per month.  Payments are due on the 15th of each month for the previous month's production.  Any payment past due by more than 30 days must be cured within fifteen days and include a 5% late payment penalty.  The rental period ends 30 months from February 28, 2006. The Debtor represents that its operations are currently idle, but that it has continued to pump water from and ventilate the mine, maintained the equipment, and provided security at the mine and processing plant.

   2.   Discussion

The Debtor contends that T-Quip is not entitled to post-petition rent under section 365(d) because the Rental Agreement is not a true lease, but a security agreement disguised as a lease.  Property rights in the bankruptcy context are determined by reference to state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914 (1979).  KRS 355.1-203 provides the rule in Kentucky for determining whether an agreement creates a lease or a security interest:

> (2) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and;
> (a) The original term of the lease is equal to or greater than the remaining economic life of the goods;
> (b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> (c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon

>   compliance with the lease agreement; or
>   (d) The lessee has an option to become the owner of the
>   goods for no additional consideration or for nominal
>   consideration upon compliance with the lease agreement.

KRS 355.1-203(2).  The statute further provides:

>   (3) A transaction in the form of a lease does not create a
>   security interest merely because:
>   (a) The present value of the consideration the lessee is
>   obligated to pay the lessor for the right to possession and
>   use of the goods is substantially equal to or is greater
>   than the fair market value of the goods at the time the
>   lease is entered into;
>   (b) The lessee assumes the risk of loss of the goods;
>   (c) The lessee agrees to pay, with respect to the goods,
>   taxes, insurance, filing, recording, or registration fees,
>   or service or maintenance costs;
>   (d) The lessee has an option to renew the lease or become
>   the owner of the goods;
>   (e) The lessee has an option to renew the lease for a fixed
>   rent that is equal to or greater than the reasonably
>   predictable fair market rent for the use of the goods for
>   the term of the renewal at the time the option is to be
>   performed; or
>   (f) The lessee has an option to become the owner of the
>   goods for a fixed price that is equal to or greater than the
>   reasonably predictable fair market value of the goods at the
>   time the option is to be performed.

KRS 355.1-203(3).  The court must interpret the Rental Agreement in light of these provisions.  The burden of demonstrating that an agreement is other than what it purports to be is on party asking the court to characterize the agreement as such.  In this case, the burden falls on the Debtor.  *See In re QDS Components, Inc.*, 292 B.R. 313 (Bankr. S.D. Ohio 2002)

T-Quip contends that the Rental Agreement is a true lease because the Debtor has the option to terminate the lease at any time.  In this regard the Rental Agreement provides in the sixth subparagraph of paragraph 1: "Nothing in this agreement will preclude the Party of the Second Part from terminating this agreement by paying the balance along with any monthly carrying charges due at any time prior to the

30th month following the date of this contract."  The Debtor maintains, however, that this provision does not grant it a meaningful option to terminate the Rental Agreement because termination obligates it to pay the total cost of the items leased.  It cites in support of its position *Hunter v. Snap-On Credit Corp. (In re Fox)*, 229 B.R. 160 (Bankr. N.D. Ohio 1999), which held that an agreement was not a true lease under Ohio law[4] because ". . . the Debtor could not cancel the 'lease agreement' without simultaneously incurring an immediate obligation for the total cost of the . . . equipment."  *Id.* at 165.

T-Quip points to the last subparagraph of paragraph 1 which provides:

> At the end of the thirty (30) month rental period, the party of the second part shall notify in writing the party of the first part of its intention to exercise its purchase/rental option at which time any remaining balance must be paid within 30 days along with interest calculated at 12% per annum on this outstanding balance.  In the event of non-payment within thirty (30) days of due date of any balances owed, the Party of the Second Part shall loose (sic) any rights they may have under this agreement to purchase the aforementioned, and all payments made shall be treated as non-refundable rental payments for the same along with the deposit and the equipment shall be returned to the Party of the First Part in good overall condition excluding normal wear and tear.

T-Quip maintains that the language concerning the treatment of payments as rental payments supports a finding that the Rental Agreement is a true lease.  This language applies in the context of the lessee exercising its option at the end of the lease term to purchase the equipment and then failing to make the payment required to accomplish the purchase.  The provision appears to be designed to

---

[4] Ohio Rev. Code sec. 1301.01(KK)(2) contains the same language as KRS 355.1-203(2).

make it clear to the lessee that in that situation, all payments made prior to the attempted exercise of the option to purchase are forfeited.

The court tends to agree with the Debtor that it was not afforded a meaningful opportunity to terminate the Rental Agreement. As stated by the court in *In re QDS Components, Inc.*, *supra*:

> The focus of New § 1-201(37)'s Bright-Line Test focuses not on whether a lessee has a contractual right to terminate under the agreement in question, but rather on whether 'the consideration the lessee is to pay the lessor for the right to use and possession of the goods is an obligation for the term of the lease not subject to termination by the lessee.' UCC § 1-201(37)[2] (West 2002). The Lease Agreement requires the Debtor to pay the Lessors upon termination the present value of precisely what they would receive if QDS made all required monthly payments for the full contract term and then exercised the purchase option. Thus, the Debtor's *payment obligation* is not subject to termination within the meaning of New § 1-201(37)[2].[5]

*In re QDS Components, Inc.*, 292 B.R. at 334. This is the situation here. The termination provision under the Rental Agreement does not terminate the Debtor's payment obligation, and the Rental Agreement therefore fails the initial element of the test under KRS 355.1-203(2). Having so concluded, the court's next task is to analyze the other four factors under KRS 355.1-203(2) to determine if any of them applies.

The Debtor maintains that the applicable provision is KRS 355.1-203(2)(d): "The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement." The Rental Agreement provides that the Debtor is to pay the balance of the

---

[5] As set out above, in Kentucky this provision is found at KRS 355.1-203(2).

"rental/purchase price" of the equipment in order to exercise its purchase option. The Debtor states that it could become the owner of the equipment "simply by paying the balance due." T-Quip contends, however, that the purchase price is not based on the rental payments, but is a set amount which was not inserted into the Rental Agreement because the Debtor had the opportunity to continue to choose equipment. According to T-Quip, the rental payments were inserted before the final equipment choice was made.

It is instructive to compare the Rental Agreement with the 2005 Agreement, which sets out a total purchase or sales price, as well as set weekly payment amounts through the life of the contract. The Rental Agreement, however, does not include a purchase price in its terms, and its absence is problematic for purposes of determining what the "balance due" is. Rental payments take the form of various amounts per ton of clean coal delivered up to certain minimum monthly amounts, but there is nothing in the Rental Agreement indicating how these monthly payments relate to any total expected to be paid under its terms. In fact, the last unnumbered paragraph on page 2 of the Rental Agreement states in part: "The rental/purchase price, either individually or in total, will be the sales price less any rental payments made." Without a stated sales price it is impossible to determine what it would take for the Debtor to exercise its purchase option, and consequently whether the amount the Debtor would pay could be considered "nominal."

The court concludes that there is nothing in the Rental Agreement to support the contention that KRS 355.1-203(3)(d) is applicable here. It is not enough for the Debtor to say that it may exercise its

purchase option by paying the balance due when it is unable to demonstrate to the court what that balance would be and whether it would be a "nominal" sum. It is therefore the opinion of this court that the Debtor has not carried its burden of demonstrating that the Rental Agreement is a disguised security agreement so as to defeat T-Quip's Motion to Compel. The court will enter a separate order granting T-Quip the relief it seeks.

Copies to:

Dean A. Langdon, Esq.
John E. Hinkel, Jr., Esq.
U.S. Trustee

8

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*William S. Howard*
**Bankruptcy Judge**
**Dated: Tuesday, October 16, 2007**
**(wsh)**